```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                      BLUEFIELD
```

**SHELIA WROBLOSKI JUDE,**

    **Plaintiff,**

v.                                   CIVIL ACTION NO. 1:21-00010

**KILOLO KIJAKAZI, Acting**
**Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM OPINION

### I. Background

By Standing Order, this action was referred to United States Magistrate Judge Cheryl A. Eifert for submission of findings and recommendations regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Eifert submitted to the court her Proposed Findings and Recommendation ("PF&R") on November 17, 2021, in which she recommended that the court deny plaintiff's request for judgment on the pleadings, grant defendant's request for judgment on the pleadings, affirm the Commissioner's decision, dismiss this action with prejudice, and remove this matter from the active docket of the court.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days plus three mailing days in which to file any objections to Magistrate Judge Eifert's Proposed Findings and Recommendation. Plaintiff timely filed

objections to the magistrate judge's Proposed Findings and Recommendation. See ECF No. 18. Defendant filed a response to those objections. See ECF No. 19.

## II. Standard of Review

Under § 636(b)(1), a district court is required to conduct a de novo review of those portions of the magistrate judge's report to which a specific objection has been made. The court need not conduct a de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982); see also Fed. R. Civ. P. 72(b) ("The district court to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.").

The court notes that judicial review in social security cases is quite limited. It is not the province of a federal court to make administrative disability decisions. Rather, de novo review in disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusions. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a

reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The court has reviewed the record to determine whether the ALJ's decision is supported by substantial evidence, which is defined as something "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

### III. Objections and Analysis

Shelia Jude filed her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits in February 2019, alleging disability beginning on February 1, 2016, due to "COPD, overactive bladder, and bi-polar." Tr. at 218-28, 243. After her application was denied initially and upon reconsideration, Jude requested an

administrative hearing. By decision dated July 29, 2020, Administrative Law Judge ("ALJ") Francine A. Serafin found that Jude was not disabled as defined by the Social Security Act. Tr. at 9-30. The instant complaint followed.

The PF&R is thorough and comprehensive and accurately details the medical evidence and the procedural history and the court need not repeat it here. Magistrate Judge Eifert concluded that the ALJ's decision was supported by substantial evidence.

The plaintiff makes the following objections to the PF&R: (a) the magistrate judge wrongly concluded that the ALJ's failure to ask the vocational expert ("VE") if his testimony conflicted with the Dictionary of Occupational Titles ("DOT") was harmless; and (b) the magistrate judge was wrong in finding that the ALJ did not err in her analysis of Jude's residual functional capacity ("RFC").

A.  *Conflict between VE and DOT*

The ALJ uses a five-step sequential process in evaluating disability claims. See Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (citing 20 C.F.R. § 404.1520). Essentially, this process requires the ALJ to consider whether a claimant (1) is engaged in substantial gainful employment; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) possesses the residual functional capacity (RFC) to return to her past relevant work;

4

and (5) if not, whether she can perform other work in light of her age, education, work experience, and residual functional capacity.  See id.  The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five.  See id.

"To answer this final question—whether sufficient other work exists for the claimant in the national economy—the ALJ 'rel[ies] primarily' on the Dictionary [of Occupational Titles]."  Id. "The ALJ may also use a vocational expert to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy."  Id. (internal quotation and citation omitted).

Social Security Ruling (SSR) 00-4p provides in pertinent part that "[o]ccupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."  However, an ALJ

may not merely rely on the VE to identify conflicts; he or she "independently must identify [apparent] conflicts between the expert's testimony and the Dictionary." Pearson, 810 F.3d at 209.

In this case, the ALJ did not ask the VE whether his testimony was consistent with the DOT. Nevertheless, Magistrate Judge Eifert concluded that this error was harmless because there was no apparent conflict between the VE's testimony and the DOT's description of at least one job that the ALJ relied upon at step five of the sequential evaluation. See ECF No. 17 at 23.

Jude argues that the error was not harmless. However, she fails to identify any conflict between the VE's testimony and the DOT. She argues that making her identify a conflict results in impermissible burden-shifting.

Plaintiff's argument misses the mark. In her decision, "[p]ursuant to SSR 00-4p, the [ALJ] . . . determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Tr. at 29; see also Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019) ("An ALJ cannot rely unquestioningly on a VE's testimony."). Having determined that there was no conflict (as the ALJ was required to do under Pearson), it then fell to plaintiff to identify a conflict. "The party seeking to overturn the Commissioner's decision has the burden to show that prejudice

6

resulted from an error." Jones v. Astrue, 691 F.3d 730, 734-35 (5th Cir. 2012); see also Critchley v. Colvin, Case No. 5:15-cv-08288, 2016 WL 3030211, at *8 (S.D.W. Va. May 4, 2016) ("[T]he ALJ confirmed in his written decision that he had determined the VE's testimony to be consistent with the DOT pursuant to SSR 00-4p. . . . Although Claimant maintains that the ALJ failed to do so and that an apparent conflict exists between the VE's testimony and the DOT, Claimant has not specifically identified the purported conflict. Indeed, the undersigned can discern no apparent conflict between the VE's testimony and the DOT."), proposed findings and recommendation adopted by 2016 WL 3033763 (S.D.W. Va. May 26, 2016).

Without a conflict between the VE and DOT, the failure to ask the question was indeed harmless. See Graves v. Colvin, 837 F.3d 589, 593 (5th Cir. 2016) ("Graves does not even attempt to show that the vocational expert's testimony was actually inconsistent with the DOT. Nor has she otherwise demonstrated prejudice. Hence, the ALJ's procedural error [in not asking the VE if his testimony was consistent with the DOT] was harmless and does not warrant reversal."); Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) ("Terry is correct that the ALJ did not ask the VE if his testimony conflicted with the DOT. However, the error is harmless unless there actually was a conflict."); Poppa v. Astrue, 569 F.3d 1167, 1174 (10th Cir. 2009) ("Because there were

no conflicts between the VE's testimony and the DOT's job descriptions, the ALJ's error in not inquiring about potential conflicts was harmless."); Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) ("[T]he ALJ's error in failing to ask the vocational expert about possible conflicts between his testimony and the Dictionary of Occupational Titles was harmless, since no such conflict appears to exist."); Massachi v. Astrue, 486 F.3d 1149, 1154 n.9 (9th Cir. 2007) (failure to follow SSR 00-4p would have been harmless if there had been no conflict between VE opinion and Dictionary); Jackson v. Barnhart, 120 F. App'x 904, 906 (3d Cir. 2005) ("Where substantial evidence supports the ALJ's opinion and where the failure to solicit the testimony contemplated in SSR 00-4p is harmless, this court will not reverse the ALJ's decision."); Critchley, 2016 WL 3030211, at *8 ("[T]he ALJ ultimately found that Claimant could perform the job of usher based on the VE's testimony, and the VE's testimony comports with the DOT's description of the job. Thus, the ALJ's failure to question the VE about potential conflicts is harmless."); Coleman v. Astrue, Civil Action No. 1:09-659-MBS, 2010 WL 3724703, at *14 (D.S.C. Sept. 17, 2010) ("Because Plaintiff has not shown a conflict between the VE's testimony and the DOT, the court agrees with the Magistrate Judge that the ALJ's failure to comply with SSR 00-4p was likely harmless

error."); see also ECF No. 17 at 24-25 (and authorities cited therein).

Under these circumstances, remand would serve no useful purpose. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."); Hall v. Colvin, Civil Action No. 7:12-CV-00327, 2014 WL 988750, at *9 (W.D. Va. Mar. 13, 2014) (remand not warranted "because the ALJ's decision, while not procedurally perfect, is supported by substantial evidence"); see also Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007) ("Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected.") (internal quotation and citation omitted). Plaintiff's objection based upon the ALJ's failure to comply with SSR 00-4p is **OVERRULED**.

*B. Deficiencies with RFC*

Jude argues that the RFC, as stated by the ALJ, does not account for her urinary incontinence. Magistrate Judge Eifert disagreed.

The ALJ's decision discusses Jude's incontinence at great length.

> With regard to allegations, the claimant reported that her impairments limit her ability to work because she has bipolar disorder and people disturb her and she gets anxiety from being around them; she has a constant

9

> drip from overactive bladder (OAB) causing wetness. . . . The claimant reported that her impairments affect her sleep because of needing to go to the bathroom during the night or the bed being wet. She reported that her impairments affect lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, and getting along with others. She stated that all those activities cause leaking which increases her anxiety. . . .
>
> At the hearing, the claimant testified that in an average day, she has to get up and take off her oxygen machine and has to change her clothes and her incontinence pad and also has to change her bedding if she had wet the bed overnight. She stated that she . . . has to go back to the bathroom and change her pad and clean her clothes. She stated that she is constantly back and forth in the bathroom and is in the bathroom about 8 to 10 times a day, approximately an hour. She stated that she has to take the time to clean herself so that she does not get a urinary tract infection (UTI) but that she has not actually had a UTI. She stated that she has no bladder control at all and if she does not get to the restroom, she has an accident on herself which brings on depression and humiliation. She stated that she has an accident during the day at least once a week. The claimant stated that she has constant urinary dripping while standing which creates more time in the bathroom to change. She stated that she does not squat at all. She stated that she would be incontinent if she tried to lift a case of water. She stated that she has been advised to restrict her water intake but she still has accidents when she lies down. She stated that she uses a pad during the day and Depends at night and she takes a bag of clothes with her to change every where [sic] she goes.
>
> \* \* \*
>
> . . . The claimant stated that she was supposed to go to Wake Forest to try placement of a TENS unit on the bladder but she could not go because of her insurance. . . .
>
> \* \* \*
>
> In terms of claimant's alleged symptoms and limitations relating to her urinary condition and hernia, the overall evidence of record, considering the

10

objective findings and treatment history supports the residual functional capacity.  With regard to objective findings, the record reflects that . . . [a]t a gynecology appointment in September 2017, testing showed stress urinary incontinence and a lesion in the right bladder base but no abnormalities of the urethra and no inflammation of the bladder.  (Ex. 2F/6). Urodynamics performed later that month showed detrusor overactivity ("DO") (Ex. 2F/6).  At a May 2018 primary care provider visit, the claimant had an unremarkable examination of her abdomen and it was noted as soft and non tender.  (Ex. 10F/21).  When the claimant saw her gynecologist again in August 2018, she had right upper quadrant tenderness and point tenderness to her abdominal scar (Ex. 2F/14).  Cystometry performed in September 2018 showed overactive bladder and stress urinary incontinence (Ex. 2F/19).

At the May 2019 consultative examination, the claimant had no abdominal tenderness.  She also had a normal gait and station and ambulated into the room without any difficulties, was able to get on and off the examination table without any difficulties, and was able to squat, perform the tandem, heel, and toe walk without difficulties (Ex. 4F).  An abdominal CT scan performed in August 2019 showed bulging of suprapubic anterior lower abdominal wall incision but not associated inflammatory changes or fluid collections and no abnormal findings with regard to the bladder, kidneys, stomach, and bowel (Ex. 12F/58).  On urology examination in December 2019, the claimant had abdominal distension but her abdomen was soft to palpation (Ex. 7F/8).

With regard to treatment, the claimant was initially treated by her primary care provider in August 2017 for a UTI (Ex. 3F/19) and she reported urinary urgency, frequency, and occasional leakage requiring pad use in September 2017 (Ex. 3F/13; 2F/3). [S]he subsequently underwent surgery in October 2017 for vaginal vault prolapse and stress urinary incontinence (Ex. 12F/15). . . .  In August 2018, the claimant reported to her gynecologist that she had sharp stabbing pain in her lower abdomen that was superficial in nature and she underwent a trigger point injection at her incision site (Ex. 2F/14).  The following month, she reported significant improvement in her pain but continued urinary urgency, frequency,

11

and occasional leakage and she was prescribed Toviaz (Ex. 2F/18-19). . . . The claimant saw a new urologist in December 2019 and reported abdominal pain and mixed incontinence, stress greater than urge, and that she uses 7 large pads per day. She requested a referral to a urogynecologist at a university if possible and the urologist indicated that she would review the records and plan accordingly (Ex. 7F). Records subsequently received from that same facility do not reflect any subsequent visits or referrals and her medication list does not reflect any medication to address overactive bladder or incontinence (Ex. 11F).

In summary, the claimant has had some abdominal/suprapubic tenderness and distention on examination at times and diagnostic testing confirming the presence of overactive bladder, but her 2019 CT scan was normal. Her treatment history reflects a surgery for vaginal prolapse in October 2017 followed by wound treatment for a non-healing incisional wound that was healed by January 2018, a trigger point injection at the incision site with significant improvement in her pain, and a ventral hernia repair in October 2019 with follow-up only on an as-needed basis. The claimant was prescribed a medication to address overactive bladder/incontinence but this medication has not been listed in any of her medication lists including by her primary care provider or her more recent urologist and those records likewise do not reflect that she has tried any sort of stimulator implant device (Ex. 1F-12F). While the claimant has consistently reported leakage of urine and use of pads, the claimant's doctors have not observed any leakage uncontrolled by pads on office visits, and discussed below, the claimant has had no deficits of hygiene on examination (Ex. 1F-12F). Further, the number of reported pads used during her waking hours is not consistent with the allegations of needing to change her pads as often as every 20 minutes. As such, the undersigned finds that any allegations consistent with the evidence discussed above are fully accounted for in the residual functional capacity limitation to light work with the additional non-exertional limitations reflected therein. Any need to change a pad or otherwise address hygiene concerns can be performed prior to and after the workday and during the normal break and meals accounted for in an average 8-hour workday.

> \* \* \*
>
> In assessing the claimant's residual functional capacity and the overall consistency of the claimant's allegations, the undersigned has considered other factors including the claimant's activities of daily living. Despite the alleged symptoms, the claimant has reported being able to live alone, care for her personal needs with no reminders or encouragement, drive, do household chores with breaks and without help or encouragement, and do laundry (Ex. 4E). . . . Further, she has reported living in a house owned by her aunt and cleaning her aunt's house to pay for the utilities (Ex. 5F/2). While the claimant testified that she has one daily and one nightly accident per week from urinary incontinence, this appears to be inconsistent with her testimony that she generally only does one load of laundry every two weeks (testimony).

Tr. at 21-26. Plaintiff does not argue that the ALJ overlooked evidence.

Based on the foregoing, the ALJ concluded that Jude had the residual functional capacity to perform light work. See Tr. at 21. Jude testified that she had to go to the bathroom approximately once an hour and the ALJ cited that testimony. See Tr. at 18 and 39. The VE testified that a person who needed to go to the bathroom approximately every hour could be accommodated. See Tr. at 58. As the PF&R noted, "[t]he ALJ considered the relevant evidence and articulated reasons based on the record that Claimant did not require additional work breaks, off task time, or other RFC limitations due to incontinence." ECF No. 17 at 17. While plaintiff may not agree with the reasons provided by the ALJ, they are supported by the record and constitute substantial evidence supporting the ALJ's RFC finding.

13

For the most part, Jude's objections simply rehash the arguments addressed in the PF&R. The court agrees with Magistrate Judge Eifert's thorough analysis and adopts that analysis as the court's own. Plaintiff's objection is **OVERRULED**.

## IV. Conclusion

For the reasons set forth above, the court **OVERRULES** plaintiff's objections to the Magistrate Judge's Findings and Recommendation. Accordingly, the court **DENIES** plaintiff's request for judgment on the pleadings, **GRANTS** defendant's request for judgment on the pleadings, **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** this case from the active docket of the court.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.

**IT IS SO ORDERED** this 30th day of September, 2022.

ENTER:

David A. Faber
Senior United States District Judge